WO

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

Jose Carlos Torres,

               Plaintiff,

v.

Carolyn W. Colvin,

               Defendant.

No. CV-13-02300-PHX-BSB

**ORDER**

Jose Carlos Torres (Plaintiff) seeks judicial review of the final decision of the Commissioner of Social Security (the Commissioner) denying his application for benefits under the Social Security Act (the Act).  The parties have consented to proceed before a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b) and have filed briefs in accordance with Local Rule of Civil Procedure 16.1.  For the following reasons, the Court affirms the Commissioner's decision.

## I.    Procedural Background

On June 9, 2009, Plaintiff filed an application for a period of disability and disability insurance benefits under Title II of the Act.  (Tr. 15.)[1]  Plaintiff alleged that he had been disabled since January 7, 2008.  (*Id.*)  After the Social Security Administration (SSA) denied Plaintiff's initial application and his request for reconsideration, he

---

[1]    Citations to "Tr." are to the certified administrative transcript of record. (Doc. 39.)

requested a hearing before an administrative law judge (ALJ).   After conducting a hearing, the ALJ issued a decision finding Plaintiff not disabled under the Act.  (Tr. 18-27.)   This decision became the final decision of the Commissioner when the Social Security Administration Appeals Council denied Plaintiff's request for review.  (Tr. 1-6); *see* 20 C.F.R. § 404.981 (explaining the effect of a disposition by the Appeals Council). Plaintiff now seeks judicial review of this decision pursuant to 42 U.S.C. § 405(g).

## II.   Administrative Record

The record before the Court establishes the following history of diagnosis and treatment related to Plaintiff's alleged impairments.   The record also includes opinions from State Agency Physicians who examined Plaintiff or reviewed the records related to his impairments, but who did not provide treatment.

### A.   Medical Treatment Evidence

In July 2008, Plaintiff saw Dr. Bapu Aluri, M.D., to establish care.  (Tr. 265.) Plaintiff reported a thirty-year history of seizures and estimated he had experienced at least ten seizures since January 2008.  (*Id.*)   He reported symptoms including a "weird sensation" (which Dr. Aluri identified as an aura), transient disturbances in his ability to express and understand language (aphasia), and loss of consciousness.  (*Id.*)   Plaintiff denied other seizure symptoms such as tongue biting or loss of bladder or bowel control. (*Id.*)   Plaintiff reported that "a vagus nerve stimulator [had been] placed without any improvement."  (*Id.*)   Dr. Aluri noted that the stimulator would be removed if Plaintiff responded to other treatment.  (Tr. 266.)   He diagnosed epileptic seizures and prescribed medication.  (Tr. 265-67.)

During a September 2, 2008 appointment with Dr. Aluri, Plaintiff reported two seizures in the previous two days and stated that he had run out of one of his seizure medications, Lamictal.  (Tr. 268-69.)   Plaintiff reported "weird sensation [aura]," loss of consciousness, and loss of awareness.  (*Id.*)   Dr. Aluri again assessed epilepsy.  (*Id.*)   On October 13, 2008, Plaintiff told Dr. Aluri that he had not had any seizures since his last visit.   (Tr. 270-71.)   On November 24, 2008, Plaintiff reported three tonic clonic

convulsions, stating that he "had the flu and [his] seizures returned."  (Tr. 272.)  He reported a "weird sensation [aura]" but denied aphasia, loss of consciousness, or other seizure symptoms.  (Tr. 272.)  During a January 7, 2009 appointment with Dr. Aluri, Plaintiff reported three tonic clonic convulsions in the past month, but denied symptoms other than a "weird sensation [aura]."  (Tr. 274.)  Dr. Aluri noted that Plaintiff's seizures were under "much better control."  (*Id.*)  The record indicates that Plaintiff returned to Dr. Aluri's office five more times in 2009, four times in 2010, and seven times in 2011.

On February 23, 2009, Plaintiff reported five tonic clonic convulsions since his January 2009 visit.  (Tr. 276.)  On April 7, 2009, Plaintiff reported no seizures in March and a couple of seizures in April.  (Tr. 278.)  On June 25, 2009, Plaintiff reported "at least" six tonic clonic convulsions since his last visit.  (Tr. 280.)  On August 31, 2009, Plaintiff reported no seizures in the last three weeks.  (Tr. 282.)  On October 29, 2009, Plaintiff reported five tonic clonic convulsions since his last visit.  (Tr. 285.)  On April 28, 2010, Plaintiff reported three "small seizures" since his last visit.  (Tr. 327.)  On May 27, 2010, Plaintiff reported two seizures since his last visit.  (Tr. 329.)  On August 11, 2010, Plaintiff reported two seizures in early June, but none during the past two months.  (Tr. 365.)   On September 30, 2010, Plaintiff reported three seizures since his last appointment.  (Tr. 362.)

On January 10, 2011, Plaintiff reported five seizures since his last appointment.  (Tr. 360.)   On February 21, 2011, Plaintiff reported no seizures since his last appointment.  (Tr. 357.)  On April 8, 2011, Plaintiff reported three seizures since his last visit.  (Tr. 354.)  On May 20, 2011, Plaintiff reported three seizures since his last visit.  (Tr. 351.)  On July 1, 2011, Plaintiff reported four small seizures and one strong seizure since his last visit.  (Tr. 348.)  On September 1, 2011, Plaintiff reported two seizures since his last visit.  (Tr. 345.)  On November 4, 2011, Plaintiff reported three "events" that lasted a "couple seconds" since his last visit.  (Tr. 342.)

In July 2008, September 2008, and May 2011, Plaintiff reported a loss of consciousness in connection with his seizures.  (Tr. 265, 268, 351.)  Otherwise, Plaintiff

repeatedly denied seizure symptoms other than a "weird sensation [aura]."  (Tr. 276-84, 327-30, 342, 67.)  In June 2009, an MRI of Plaintiff's brain was normal.  (Tr. 288.)  In April 2010, Dr. Aluri noted that Plaintiff's vagus nerve stimulator had been removed.  (Tr. 327.)   In May 2010, Dr. Aluri stated that he would consider reducing one of Plaintiff's seizure medications, Keppra, at Plaintiff's next appointment if he continued to do well.   (Tr. 330.)   Dr. Aluri subsequently tapered Plaintiff off that medication.  (Tr. 363, 366.)

On April 8, 2011, Plaintiff told Dr. Aluri that he had not taken a seizure medication that Dr. Aluri prescribed in October 2009, Vimpat, because his health insurance denied coverage.  (Tr. 354.)  The record does not reflect when the insurance company denied coverage for the medication or whether Plaintiff ever took the medication.  (Tr. 354, 286 ("start Vimpat" in October 2009).)  Dr. Aluri did not record serum drug levels.  (Tr. 268-84, 327-30, 342-67.)

### 2.	Treatment Related to Depression

During his initial appointment with Dr. Aluri in July 2008, Plaintiff reported depression but stated that it improved with treatment.  (Tr. 265.)  Dr. Aluri did not diagnose depression or prescribe anti-depressant medication at that visit.  (Tr. 265-67.)

Between October 2008 and June 2009, Dr. Aluri prescribed anti-depressant medication and noted that Plaintiff's depression was better with treatment.  (Tr. 270.)  He did not record any abnormal psychiatric examination findings.  (Tr. 270-81.)  Beginning in August 2009, Dr. Aluri diagnosed depression and stated that, with treatment, it was "in remission."  (Tr. 283, 328, 330, 343, 346, 349, 352, 355, 358, 361, 363, 366.)

### B.	Medical Opinion Evidence

### 1.	Dr. Aluri

On May 9, 2011, Dr. Aluri wrote a letter "to whoever it may concern" stating that Plaintiff had intractable epilepsy that was not controlled with medication, Plaintiff had seizures regularly, and the prognosis for controlling Plaintiff's seizures did "not look

good."   (Tr. 341.)   Dr. Aluri noted that a nerve stimulator was ineffective and that Plaintiff was currently taking two anti-epileptic medications.  (*Id.*)

### 2.      Dr. Lloyd Anderson

On February 11, 2010, state agency physician Lloyd Anderson reviewed the record and completed a physical residual functional capacity (RFC) assessment. (Tr. 292.)  He opined that Plaintiff did not have any exertional limitations, but he should not climb ladders, ropes, or scaffolds, and should avoid machinery and heights.  (Tr. 293, 294-96.)  Dr. Anderson concluded that the record lacked the documentation regarding seizures, such as drug serum levels and accurate third-party descriptions of seizures and the frequency of seizures, that "obscure[d] credibility" and precluded a finding of presumptively disabling epilepsy.  (Tr. 297); *see* 20 C.F.R. pt. 404, subpt. P, app. 1 § 11.00A.

### 3.      Dr. Martha Goodrich

On October 19, 2010, state agency physician Dr. Goodrich reviewed the record and completed a physical RFC assessment.  (Tr. 70-71.)  She opined that Plaintiff did not have any exertional limitations, but he should not climb ladders, ropes, or scaffolds, and should avoid machinery and heights.  (*Id.*)

### 4.      Dr. Ashley Hart

On April 12, 2010, Plaintiff saw state agency psychologist Ashley Hart for a psychological evaluation for his disability benefits claim.   Plaintiff reported that he experienced seizures once every five or six weeks, and estimated that he had ten seizures during the past year. (Tr. 372, 375.)  Plaintiff stated that he could carry out most aspects of daily living and go shopping.   (Tr. 372.)    After conducting a psychological examination, Dr. Hart opined that Plaintiff had mildly deficient memory skills, good social interaction, and "very good" personal activities of daily living.  (Tr. 371-76.)

### 5.      Dr. Eric Penner and Dr. Eugene Campbell

As part of the administrative proceedings, state agency psychologists Eric Penner (Tr. 322-24) and Eugene Campbell (Tr. 72-73) reviewed the record and opined that

1    Plaintiff had abilities consistent with unskilled work.  (*Id.*)  *See* 20 C.F.R. § 404.1568(a)

2    (unskilled work).

3    **III.    The Administrative Hearing**

4              Plaintiff was in his early fifties at the time of the administrative hearing and the

5    ALJ's decision.  (Tr. 36.)  He had a degree as an electrician from the University of

6    Mexicali in Mexico.  (Tr. 37.)  Plaintiff had past relevant work as a janitor and an

7    appliance repair person.  (Tr. 40.)  Plaintiff testified that he worked at a casino as a

8    housekeeper from 1994 to 2008.  (*Id.*)  He testified that he had three to five seizures a

9    month, and that he became depressed and incapacitated for several days after a seizure.

10   (Tr. 41, 47-51.)  Plaintiff testified that he "hardly ever" went out alone and that he had

11   never driven.  (Tr. 45.)  He testified that he cooked if he had to, washed dishes, mopped

12   and swept, did laundry, helped with grocery shopping, and raked leaves.  (Tr. 42-43.)

13             The vocational expert testified that an individual with the limitations identified in

14   the ALJ's RFC[2] could perform Plaintiff's past relevant work as an appliance repair

15   person as actually performed, and could perform other work that existed in significant

16   numbers in the national economy.  (Tr. 54-58.)

17   **IV.    The ALJ's Decision**

18             A claimant is considered disabled under the Social Security Act if he is unable "to

19   engage in any substantial gainful activity by reason of any medically determinable

20   physical or mental impairment which can be expected to result in death or which has

21   lasted or can be expected to last for a continuous period of not less than 12 months."  42

22   U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A) (nearly identical standard for

23   supplemental security income disability insurance benefits).  To determine whether a

24

25

26           [2]   As set forth in Section IV(B), the ALJ found that Plaintiff had the RFC to
     "perform a wide range of medium work," with no exertional limitations, but that he could
27   "never climb ladders," "only occasionally balance," and "must avoid all exposure to
     heights and moving machinery."  (Tr. 22).  The ALJ also found that Plaintiff was able "to
28   understand, remember, and carry out simple job instructions only; and he has a fair ability
     to complete a workweek without psychological interruptions, fair is defined as limited
     but satisfactory."  (*Id.*)

- 6 -

claimant is disabled, the ALJ uses a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920.

### A.    The Five Step Sequential Evaluation Process

In the first two steps, a claimant seeking disability benefits must initially demonstrate (1) that he is not presently engaged in a substantial gainful activity, and (2) that his medically determinable impairment or combinations of impairments is severe. 20 C.F.R. §§ 404.1520(b) and (c), 416.920(b) and (c). If a claimant meets steps one and two, there are two ways in which he may be found disabled at steps three through five. At step three, he may prove that his impairment or combination of impairments meets or equals an impairment in the Listing of Impairments found in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is presumptively disabled. If not, the ALJ determines the claimant's RFC. 20 C.F.R. §§ 404.1520(e), 416.920(e). At step four, the ALJ determines whether a claimant's RFC precludes him from performing his past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant establishes this prima facie case, the burden shifts to the government at step five to establish that the claimant can perform other jobs that exist in significant number in the national economy, considering the claimant's RFC, age, work experience, and education. 20 C.F.R. §§ 404.1520(g), 416.920(g). If the government does not meet this burden, then the claimant is considered disabled within the meaning of the Act.

### B.    The ALJ's Application of the Five Step Evaluation Process

Applying the five-step sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date, January 7, 2008. (Tr. 19.) At step two, the ALJ found that Plaintiff had the following severe impairments: epilepsy and depression, 20 C.F.R. 404.1520(c). (*Id.*) The ALJ found that Plaintiff did not have an impairment or combination of impairments that significantly limited (or was expected to significantly limit) his ability to perform basic work-related activities for twelve consecutive months. (Tr. 21.) The ALJ specifically

found the "medical evidence [did] not show the severity or frequency of seizure activity required to meet or equal the criteria of listings 11.02 or 11.03." (*Id.*)

The ALJ found that Plaintiff had the RFC to "perform a wide range of medium work." (Tr. 22.) The ALJ found that Plaintiff did not have any exertional limitations, however, he could never climb ladders, and "must avoid all exposure to heights and moving machinery." (*Id.*) The ALJ further found that Plaintiff could understand, remember, and carry out simple job instructions, and he had "a fair [limited but satisfactory] ability to complete a workweek without psychological interruptions . . . ." (*Id.*)

Based on Plaintiff's and the vocational expert's testimony, the ALJ found that Plaintiff could perform his past relevant work as an appliance repair person as it was "actually performed." (Tr. 25, Tr. 54 (characterizing Plaintiff's past relevant work as an appliance repair person).) The ALJ noted the vocational expert's testimony that to the extent a vacuum cleaner is considered moving machinery, Plaintiff must avoid it based on his RFC. (Tr. 25, Tr. 56.) The ALJ also noted that Plaintiff testified that his past work at the casino involved repairing appliances. (Tr. 25, Tr. 56.) Plaintiff testified that he repaired machinery, but did not test vacuums or use machines to clean the casino. (Tr. 56.) He testified that he sat at a table to repair the machines and assemble new parts. (*Id.*) The vocational expert testified that this would not involve "moving machinery." (Tr. 57.) Accordingly, the ALJ found that Plaintiff could perform his past relevant work as an appliance repair person, as it was actually performed. (Tr. 25.)

The ALJ alternatively found that Plaintiff could perform other work that existed in significant numbers in the national economy. (Tr. 25-26.) The ALJ specifically found that Plaintiff could perform work as a janitor (DOT 381.687-018), a laundry worker (DOT 361.684-014), and a hand packager (DOT 706.684-022). (Tr. 26.) The ALJ concluded that Plaintiff had not been under a disability as defined in the Act from January 7, 2008 through the date of her decision. (Tr. 26.) Therefore, the ALJ denied Plaintiff's application for a period of disability and disability insurance benefits.

## V.      Standard of Review

The district court has the "power to enter, upon the pleadings and transcript of record, a judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).  The district court reviews the Commissioner's final decision under the substantial evidence standard and must affirm the Commissioner's decision if it is supported by substantial evidence and it is free from legal error.  *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996); *Ryan v. Comm'r of Soc. Sec. Admin.*, 528 F.3d 1194, 1198 (9th Cir. 2008).  Even if the ALJ erred, however, "[a] decision of the ALJ will not be reversed for errors that are harmless."  *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

Substantial evidence means more than a mere scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted); *see also Webb v Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005).  In determining whether substantial evidence supports a decision, the court considers the record as a whole and "may not affirm simply by isolating a specific quantum of supporting evidence."  *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (internal quotation and citation omitted).

The ALJ is responsible for resolving conflicts in testimony, determining credibility, and resolving ambiguities.  *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  "When the evidence before the ALJ is subject to more than one rational interpretation, [the court] must defer to the ALJ's conclusion."  *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004) (citing *Andrews*, 53 F.3d at 1041).

## VI.     Plaintiff's Claims

Plaintiff raises the following claims: (1) the ALJ erred at step three of the sequential evaluation process by failing to evaluate whether Plaintiff's impairments met or equaled a Listing (Doc. 40 at 11-12) and by failing to find that Plaintiff's epilepsy met Listing 11.02 (Doc. 40 at 8-11); (2) the ALJ erred by formulating an RFC that did not

include additional epilepsy precautions (Doc. 40 at 12, 14); (3) the ALJ erred by concluding that Plaintiff could perform his past relevant work (Doc. 40 at 12-13); and (4) the ALJ erred by finding that Plaintiff could perform other work that existed in significant numbers in the national economy. (Doc. 40 at 13-15.)[3] The Court considers these claims below.

### A.   The ALJ did not Err at Step Three

Plaintiff argues that the ALJ erred at step three of the sequential evaluation process by failing to consider whether Plaintiff's impairments met or equaled a listed impairment. (Doc. 40 at 11-12.) He further argues that the ALJ erred by concluding that Plaintiff's epilepsy did not meet Listing 11.02. (Doc. 40 at 8-11.) As discussed below, the Court concludes that the ALJ did not err at step three.

#### 1.   The ALJ Made a Step-Three Determination

As an initial matter, the record reflects that the ALJ made a step-three finding. (Tr. 21.) Specifically, the ALJ found that that "[t]he medical evidence does not show the severity or frequency of seizure activity required to meet or equal the criteria of listings 11.02 or 11.03."[4] (*Id.*) Accordingly, the ALJ did not err by failing to make a step-three finding. Additionally, as discussed below, the ALJ did not err by concluding that Plaintiff's epilepsy did not meet Listing 11.02.

///

///

_____

[3] Plaintiff identifies her claims as follows: (1) the ALJ erred by failing to find the claimant's epilepsy met the listing; (2) the ALJ erred by misapplying the step three and four analysis; and (3) the ALJ erred by finding alternate jobs that do not comply with the RFC for the claimant. (Doc. 40 at 8.) Because the manner in which Plaintiff labeled his claims does not accurately reflect the nature of his claims, the Court re-labeled Plaintiff's claims.

[4] To meet the criteria for Listing 11.03, a claimant must show that he experiences minor motor (petit mal) seizures more frequently than once weekly in spite of compliance with prescribed treatment for at least three months. SSR 87-6, 1987 WL 109841, at *3. Plaintiff does not argue that he meets or equals Listing 11.03. (Doc. 40.)

## 2.     Plaintiff's Epilepsy does not Meet Listing 11.02

Conditions contained in the Listing of Impairments (Listings) are considered so severe that "they are irrebuttably presumed disabling, without any specific finding as to the claimant's ability to perform his past relevant work or any other jobs." *Lester*, 81 F.3d at 828.  The Listings were "designed to operate as a presumption of disability that makes further inquiry unnecessary." *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990).  If a claimant shows that his impairment or combination of impairments meets or equals a Listing, he will be found presumptively disabled.  *See* 20 C.F.R. §§ 416.925-416.926; *Sullivan*, 493 U.S. at 531 (the claimant has the burden of proving that he satisfies the criteria of a listed impairment).

Plaintiff contends that the evidence establishes that his epilepsy meets Listing 11.02 and, therefore, the ALJ erred at step three.  (Doc. 40 at 8-11.)  The Commissioner disputes this assertion.   (Doc. 42.)   To be considered disabled under Listing 11.02, Plaintiff must show the following:

> [C]onvulsive epilepsy [grand mal or psychomotor] . . . documented by detailed description of a typical seizure pattern, including all associated phenomena, occurring more frequently than once a month in spite of at least three months of prescribed treatment.  With either
>
> (A) daytime episodes (loss of consciousness and convulsive seizures), or
>
> (B) nocturnal episodes manifesting residuals which interfere significantly with activity during the day.

20 C.F.R. Part 404, Subpt. P, App. 1 § 11.02.

Listing 11.00A further provides that at least one detailed description of a typical seizure is required and, if professional observation is not available, "[t]estimony of persons other than the claimant is essential for description of type and frequency of seizures . . . ."  20 C.F.R. pt. 404, subpt. P, app. 1 § 11.00(A).  "The description includes the presence or absence of aura, tongue bites, sphincter control, injuries associated with the attack, and postictal phenomena."  *Id.*  Additionally, Listing § 11.00A provides that:

> Under 11.02 . . ., the criteria can be applied only if the impairment persists despite the fact that the individual is following prescribed antiepileptic treatment.  Adherence to prescribed antiepileptic therapy can ordinarily be determined from objective clinical findings in the report of the physician

currently providing treatment for epilepsy . . . . When seizures are occurring at the frequency stated in 11.02 or 11.03, evaluation of the severity of the impairment must include consideration of the serum drug levels.

20 C.F.R. Part 404, Subpt. P, App. 1 § 11.00A; *see also* SSR. 87-6, 1987 WL 109184, at

*2 ("In every instance, the record of anticonvulsant blood levels is required before a

claim can be allowed.").

Substantial evidence supports the ALJ's finding that Plaintiff's seizures did not

occur at the frequency required by Listing 11.02.[5]  (Tr. 21.)  The record indicates that, at

times, Plaintiff went a month or more without a seizure.  (Tr. 278 (no seizures in March

2009), Tr. 282 (August 2009 report of no seizures in the last three weeks), Tr. 365

(August 2010 report of no seizures in the past two months), Tr. 357 (February 2011

report of some "sensation before seizure" but no seizures since his last visit), Tr. 342

(November 2011 report of three "events" since the last visit which "last[ed] [a] couple of

seconds")).  Although, as Plaintiff notes, there is other evidence in the record indicating

that Plaintiff reported more frequent seizures at other times, the court must uphold the

ALJ's rational findings of fact, even if evidence exists to support more than one rational

interpretation.[6]  *See Batson*, 359 F.3d at 1193; *Andrews v. Shalala*, 53 F.3d 1035, 1039-

40 (9th Cir. 1995).

Additionally, even if Plaintiff established the required frequency and severity of

seizures (which the Commissioner does not concede (Doc. 42 at 12)), it is not clear

_____

[5]  Although the ALJ did not explicitly discuss the evidence supporting her step-three determination in the section discussing step three, she discussed that evidence elsewhere in her decision.  *See Lewis v. Apfel*, 236 F.3d 503, 512, 514 (9th Cir. 2001) (upholding a step-three finding when the ALJ stated that the claimant did not meet a listing and found that the claimant's epilepsy was controlled with treatment when the ALJ did not recite the evidence supporting his conclusion under the "Findings" section of his decision, but discussed it elsewhere).

[6]  To the extent Plaintiff relied on Dr. Aluri's opinion to support his argument that the ALJ erred at step three (Doc. 40 at 11), that argument is unpersuasive because the ALJ found that Dr. Aluri's assessment was vague and that the frequency and severity of Plaintiff's seizure activities noted in his opinion were not supported by the medical record.  (Tr. 24.)  Plaintiff does not argue that the ALJ erred in weighing the medical source opinion evidence, including Dr. Aluri's opinion.  (Doc. 40.)

- 12 -

whether Plaintiff fully complied with treatment and there are no drug serum levels in the record.[7]  Plaintiff asserts that blood tests were ordered and reviewed with him.  (Doc. 43 at 6 (citing Tr. 271, 273, 275, 277, 346, 349).)  However, Plaintiff concedes that "there are no drug serum levels recorded to show the claimant was taking his medication . . . ." (Doc. 43 at 4.)  "An ALJ cannot allow a claim under the epilepsy listing without a record of anticonvulsant blood levels."  *Lewis v. Apfel*, 236 F.3d 503, 513 (9th Cir. 2001); *see* 20 C.F.R. Part 404, Subpt. P, App. 1 § 11.00A; *see also* SSR. 87-6, 1987 WL 109184, at *2 ("[T]he record of anticonvulsant blood levels is required before a claim can be allowed.").  Thus, the absence of drug serum levels precluded a finding that Plaintiff met Listing 11.02.  Moreover, the record does not include a detailed description from Plaintiff's physician, based on his personal observation, of a typical seizure for Plaintiff, or a description of Plaintiff's seizures from "persons other than the claimant."  The lack of such a description precluded a finding that Plaintiff met Listing 11.02.  *See* 20 C.F.R. pt. 404, subpt. P, app. 1 § 11.00(A).

Additionally, the record supports the ALJ's conclusion that Plaintiff's epilepsy did not meet Listing 11.02.  State agency physician reviewing physician Dr. Anderson opined that Plaintiff did not meet or medically equal a listing.  (Tr. 297.)  In support of his opinion, Dr. Anderson noted the absence of the requisite third-party statements and drug serum levels.  (*Id.*)  The ALJ gave Dr. Anderson's opinion substantial weight because he found it consistent with the record.  (Tr. 24); *see* 20 C.F.R. §404.1527(e)(2)(i) (state agency medical consultants are highly qualified physicians who are also experts in Social Security disability evaluation); *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) (reviewing source opinions constitute substantial evidence when they are consistent with independent clinical findings or other record evidence).  This opinion is substantial evidence to support the ALJ's conclusion that Plaintiff did not meet Listing 11.02 and

---

[7]  Based on review of the record, it is unclear whether Plaintiff took all of his seizure medication as prescribed.  (Tr. 23; *Compare* Tr. 286 (prescribing Vimpat in October 2009) *with* Tr. 354 (stating, in April 2011, that Plaintiff was not taking Vimpat because his health insurance declined to cover it).)

1    Plaintiff does not assert that the ALJ erred in assigning substantial weight to that opinion.

2    (Doc. 40.)

3        In conclusion, the ALJ did not err in concluding that Plaintiff's epilepsy did not

4    meet or equal Listing 11.02 and that determination is supported by substantial evidence in

5    the record.

6        **3.    Plaintiff's Combination of Impairments Do not Equal 11.02**

7        Plaintiff implies that, even if his epilepsy did not meet Listing 11.02, his epilepsy

8    and depression combined to equal the listing.   (Doc. 40 at 9, 11).   If a claimant's

9    impairment does not meet the criteria specified in the listings, he is still disabled if the

10   impairment equals a listed impairment.  20 C.F.R. § 404.1520(d).  If a claimant has more

11   than one impairment, the Commissioner must determine "whether the combination of

12   [the] impairments is medically equal to any listed impairment." 20 C.F.R. § 404.1526(a).

13   The claimant's symptoms "must be considered in combination and must not be

14   fragmentized in evaluating their effects."  *Lester v. Chater*, 81 F.3d 821, 829 (9th Cir.

15   1995) (citations omitted).  A finding of equivalence must be based on medical evidence

16   only.  20 C.F.R. § 404.1529(d)(3).

17       The ALJ stated that Plaintiff's impairments or combination of impairments did not

18   meet or equal a listed impairment.  (Tr. 21.)  Plaintiff does not offer any evidence that his

19   epilepsy and depression combined to equal a listed impairment.  Additionally, "[n]othing

20   in the regulations . . . says a claimant may circumvent the compliance requirement of the

21   epilepsy listings by 'equaling' rather than 'meeting' the listing."  *Lewis*, 236 F.3d at 514.

22   Here, as set forth above, Plaintiff did not meet his burden to "present medical findings

23   equal in severity to all the criteria for" Listing 11.02.   *Zebley*, 493 U.S. at 531.

24   Additionally, Dr. Aluri's treatment notes indicate that Plaintiff's depression was "in

25   remission with treatment."  (Tr. 24, 283, 328, 330, 343, 346, 349, 352, 355, 358, 361,

26   363, 366).   Thus, substantial evidence supports the ALJ's finding that Plaintiff's

27   combination of impairments did not equal Listing 11.02.  (Tr. 21.)

28

Because Plaintiff did not meet his burden to establish that his impairment or combination of impairments met or medically equaled Listing 11.02, the ALJ did not err in concluding that Plaintiff was not presumptively disabled at step three.

### B.    The ALJ did not err in Formulating the RFC

As previously stated, the ALJ found that Plaintiff had the RFC to perform a full range of medium work, but he could never climb ladders and must avoid all exposure to heights and moving machinery.   (Tr. 22.)   Plaintiff argues that the ALJ erred by formulating an RFC that did not include sufficient seizure precautions.  (Doc. 40 at 12.)

The RFC assessment considers functional limitations and restrictions that result from a claimant's medically determinable impairment or combination of impairments. SSR 96-8p, 1996 WL 374184.  "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, *inter alia*, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'"  *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).  The determination of a claimant's RFC is wholly within the province of the ALJ. *See* SSR 96–8p, 1996 WL 374184.   In formulating a claimant's RFC, an ALJ is not required to include limitations that are not supported by substantial evidence.  *Osenbrock v. Apfel*, 240 F.3d 1157, 1164-65 (9th Cir. 2001).   Here, the ALJ stated that her RFC assessment was supported by "the objective medical evidence, the opinions of State agency reviewing physicians and psychologists, and the claimant's activities of daily living." (Tr. 24.)

Plaintiff argues that "a person having a tonic-clonic seizure should not be near table corners that are unpadded," open drawers, or "anything that they could hit their head on including a hard floor."  (Doc. 40 at 12.)  He argues that the ALJ erred by failing to include seizure precautions in the RFC limiting Plaintiff to "being on the carpet at all times, sitting down and avoiding sharp corners."  (Doc. 40 at 13-14.)  Plaintiff, however, does not suggest this error was predicated on a separate error such as improper rejection of medical opinion testimony, or an improper rejection of Plaintiff's own testimony.

(Doc. 40.)  Additionally, Plaintiff does not cite any evidence in the record supporting his argument that the ALJ was required to include these limitations in the RFC.  For example, Plaintiff does not cite any medical opinion evidence indicating that Plaintiff must be "on the carpet at all times, sitting down, and avoiding sharp corners."  (Doc. 40 at 13-14.)  Although Plaintiff testified that his work area was carpeted, as discussed below, there was other evidence in the record indicating that Plaintiff was not always on carpeted surfaces.

The ALJ's RFC assessment is supported by the opinions of state agency reviewing physicians Dr. Anderson and Dr. Goodrich that Plaintiff should not climb ladders, ropes, or scaffolds, and should avoid machinery and heights.  (Tr. 294-96, 70-71.)  The ALJ assigned the reviewing physicians' opinions substantial weight (Tr. 24), and Plaintiff does not argue that the ALJ erred in weighing medical opinion evidence.  (Tr. 40.)  The RFC assessment is also supported by the opinion of state agency reviewing psychologist Dr. Penner who opined that Plaintiff should avoid ladders and hazards.  (Tr. 322-24.)

Additionally, when evaluating Plaintiff's RFC, the ALJ found that, despite his longstanding seizure disorder, Plaintiff worked for a number of years as an electrical appliance repair person.  (Tr. 23-24; *see* Tr. 219, 265.)  The ALJ also noted that Plaintiff prepared simple meals, did household chores and some yard work, read, worked on puzzles, and grocery shopped.[8]  (Tr. 24; *see* Tr. 42-43, 212-14, 375.)  Plaintiff's daily activities did not indicate that he required restrictions other than those included in the ALJ's RFC to perform work.

In summary, the ALJ reasonably found that Plaintiff must avoid all exposure to heights and moving machinery (Tr. 22), and her opinion is supported by substantial evidence in the record.  Accordingly, the ALJ did not err in formulating the RFC.

---

[8]  The ALJ discounted Plaintiff's credibility based, in part, on the activities of daily living.  (Tr. 24.)  Plaintiff does not argue that the ALJ erred in assessing his credibility.  (Doc. 40.)

**C.    The ALJ did not err at Step Four**

Plaintiff argues that the ALJ erred at step four by finding that an individual with the limitations the ALJ identified — who must avoid heights and moving machinery — could perform his past relevant work as an appliance repair person.  (Doc. 40 at 13.)

Plaintiff bears the burden of proving that he cannot perform his past relevant work. 20 C.F.R. § 404.1512(a).  At step four, the ALJ concluded that Plaintiff could perform his past relevant work as an appliance repair person "as actually performed," and that work did not require the performance of work-related activities precluded by Plaintiff's RFC. (Tr. 25.)  Plaintiff argues that the ALJ erred by concluding that he could perform his past relevant work as an appliance repair person because that position was performed with accommodations and the ALJ did not consider whether the position, as accommodated, existed in significant numbers in the national economy.  (Doc. 40 at 13.)

An ALJ may determine that a claimant retains the capacity to perform his past relevant work in three circumstances: (1) if the claimant retains the capacity to perform a past relevant job based on a broad, occupational classification of the job; (2) if the claimant retains the capacity to perform the particular functional demands and job duties specific to a previous job as he actually performed it; or (3) if the claimant retains the capacity to perform the functional demands and duties of the job as ordinarily required by employers throughout the national economy.  SSR 82–61, 1982 WL 31387; *see also Pinto v. Massanar*i, 249 F.3d 840, 845 (9th Cir. 2001) (stating that the Ninth Circuit has "never required explicit findings at step four regarding a claimant's past relevant work both as generally performed and as actually performed.").  Thus, a claimant is not disabled if he can perform past relevant work "either as actually performed or as generally performed in the national economy." *Lewis v. Apfel*, 281 F.3d 1081, 1083 (9th Cir. 2002) (citing *Pinto*, 249 F.3d at 845).  "In making his determination at step four, the ALJ is therefore permitted to consider both plaintiff's past relevant job title and the duties plaintiff actually performed." *Stacy v. Colvin*, 2013 WL 4859301, at *5 (D. Or. Sept. 11, 2013).   "[T]he claimant is the primary source for vocational documentation, and

statements by the claimant regarding past work are generally sufficient for determining skill level; exertional demands and nonexertional demands of such work." SSR 82-62, 1982 WL 31386; *see also Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993) (a claimant's description of past work is considered highly probative).   Here, the ALJ applied the second test and found Petitioner capable of performing his past relevant work as actually performed.  (Tr. 25.)

Plaintiff testified that he sat at a table and repaired vacuums and appliances. (Tr. 56-57 (stating that his "only job was to repair them on a table").)  Plaintiff clarified that he did not test the appliances or use them to clean the casino.  (Tr. 56.)  He also stated that he assembled parts.  (Tr. 57.)  The vocational expert identified Plaintiff's past relevant work as an appliance repair person.  (Tr. 54-55.)  She testified that a vacuum could be considered moving machinery, but stated that Plaintiff's past relevant work at the casino, as Plaintiff described it, did not involve moving machinery.  (Tr. 55, 57.) Based on the ALJ's determination of Plaintiff's RFC, Plaintiff's testimony, and the vocational expert's testimony, the ALJ found that Plaintiff could perform his past relevant past work as an appliance repair person as actually performed.  (Tr. 25.)

Plaintiff does not challenge the description of his work as stated in the ALJ's decision and does not argue that his work at the casino does not constitute past relevant work as defined in the Act.  (Doc. 40); *see* 20 C.F.R. §§ 404.1565, 404.1573.  Rather, Plaintiff argues that the ALJ erred by concluding that he could perform his past relevant work as an appliance repair person because that position was performed with accommodations and the ALJ did not consider whether the position, as accommodated, existed in significant numbers in that national economy.  (Doc. 40 at 13.)  Plaintiff identifies the accommodations as "working at a table with carpet nearby."  (Doc. 40 at 12, 43 at 7, 8.)  Plaintiff asserts that the "ALJ admitted during the administrative hearing that the position at the casino was a 'fairly accommodated job.'"  (Doc. 40 at 13 (citing Tr. 59).)  However, the portion of the transcript that Plaintiff cites reflects that Plaintiff's counsel, not the ALJ, asked the vocational expert whether Plaintiff's job at the casino was

"fairly accommodated."  (Tr. 59.)  The vocational expert responded that she "[did] not know how to answer that.  Yes, he did say they made accommodations for him.  That seems reasonable.  But, the assembly, an appliance repair person would sit in a room, at a table repairing the machinery, so it doesn't sound all that different."  (Tr. 59.)

Even if Plaintiff's past relevant work was considered to be performed with accommodations, courts have found that the ALJ did not err in concluding that a claimant was not disabled because the claimant could perform past relevant work that was accommodated.  *See Giordano v. Astrue,* 304 Fed. App'x. 507, 509 (9th Cir. 2008) ("It was . . . reasonable for the ALJ to conclude that [the claimant] could return to her past relevant work, given that [the claimant's] own description of her past jobs accommodated all of the limitations."); *Sharkey v. Comm'r. Soc. Sec. Admin*., 2008 WL 3289267, at *6 (D. Idaho Aug. 8, 2008) (ALJ did not err in considering the claimant's previous work as a book keeper, as it was performed with significant accommodation, as past relevant work or in concluding that the claimant could perform her past relevant work as actually performed).  Thus, the ALJ did not err in concluding that Plaintiff could perform his past relevant work as it was actually performed.[9]

In addition, the authority Plaintiff cites does not support his assertion that "to find the claimant can do his past work with accommodations for his disability, the job must exist in significant number."   (Doc. 40 at 13 and Doc. 43 at 8 (citing 20 C.F.R. § 416.960(b)(3); *Beltran v. Astrue*, 700 F.3d 386 (9th Cir. 2012)).)

First, § 416.960(b)(3) states that " [i]f we find you that you have the residual functional capacity to do your past relevant work, we will determine that you can still do your past work and are not disabled."   That section further states that "[w]e will *not* consider your vocational factors of age, education, and work experience or whether your past work exists in significant numbers in the national economy."   (emphasis added).

---

[9]   Plaintiff also states that the ALJ cannot draw vocational conclusions without testimony or evidence from a vocational expert.  (Doc. 40 at 13.)  This argument is not persuasive because the ALJ considered testimony from a vocational expert.  (Tr. 54-59.)

1
2
3

Thus, § 416.960(b)(3) does not support Plaintiff's argument that the ALJ erred by failing to consider whether Plaintiff's past relevant work as actually performed existed in significant numbers in the national economy.[10]

4
5
6
7
8
9
10
11
12
13
14
15

Second, *Beltran* does not support Plaintiff's assertion that the ALJ was required to determine whether Plaintiff's past relevant work existed in significant numbers in the national economy.  Unlike this case, the plaintiff in *Beltran* established that she could not perform her past relevant work.  *Beltran,* 700 F.3d at 388.  Because the plaintiff could not perform her past relevant work, the ALJ considered whether the plaintiff could perform other work that existed in significant numbers in the national economy.  *Id.*  The Ninth Circuit held that the ALJ erred in concluding that 135 surveillance jobs regionally, or 1,680 jobs nationally, constituted a significant number of jobs considering the plaintiff's vocational factors and functional limitations.  *Id.* at 380-90.  *Beltran* involved a step-five determination and does not support Plaintiff's argument that the ALJ erred at step four by failing to consider whether Plaintiff's past relevant work existed in significant numbers in the national economy.

16
17
18
19
20
21
22
23

Finally, as the Commissioner argues (Doc. 42 at 18-19), the ALJ did not err in concluding that Plaintiff could perform his past relevant work as an appliance repair person, as actually performed, because the DOT indicates that the position of appliance repair person does not include moving machinery or heights.  *See* DOT 723.584-101 (appliance repairer), 1991 WL 679518.  The description of appliance repairer in DOT 723.584-010, states that "High Exposed Places: Not Present — Activity or condition does not exist."  *Id.*  It also states that "Moving Mech[ical] Parts: Not Present — Activity or condition does not exist."  *Id.*  Thus, the ALJ did not err in finding that Plaintiff could

24
25
26
27

---

[10]   Because Plaintiff applied for a period of disability and disability insurance benefits under Title II of the Act, the regulations in 20 C.F.R. part 404 apply.  However, part 404 and has parallel citations in part 416, which apply to applications under Title XVI.  Sections 416.960(b)(3) and 404.1560(b)(3) are the same.  Accordingly, the Court's analysis is the same whether Plaintiff cited to § 416.960(b)(3) or § 404.1560(b)(3).

28

perform his past relevant work as an appliance repair person as that job was actually performed.

Because the ALJ's findings concerning Plaintiff's past relevant work and his capacity to perform such past relevant work represent a reasoned application of the law supported by substantial evidence, the Court affirms the determination that Plaintiff was not disabled because he could perform his past relevant work as it was actually performed.

### D.    The ALJ did Not Make a Harmful Error at Step Five

Plaintiff argues that the ALJ erred in concluding that, assuming Plaintiff could not perform his past relevant work, Plaintiff could perform other work as a janitor (DOT 381.687-018), laundry worker (DOT 361.684-014), or hand packager (DOT 920.587-018), because these positions involve heights or machinery and thus are inconsistent with the ALJ's RFC determination that Plaintiff should avoid moving machinery and heights. (Doc. 40 at 13, Tr. 22, 26.)

To support his argument that his RFC precluded him from performing work as a janitor, Plaintiff argues that the DOT definition of janitor refers to a vacuum cleaner and the vocational expert testified that a vacuum cleaner could be considered moving machinery.  (Doc. 40 at 14 (citing Tr. 56).)  As Plaintiff argues, the description of the janitor position in DOT 381.687-018 specifically refers to a vacuum cleaner. www.occupationalinfo.org/38/38167018.html.    (last visited April 29, 2015).    The vocational expert testified that a vacuum cleaner could be considered moving machinery. Accordingly, the vocational expert's testimony that Plaintiff could perform work as a janitor contradicts her earlier testimony that a vacuum would be considered moving machinery and that Plaintiff should avoid moving machinery.  Accordingly, the Court agrees that the ALJ erred in concluding that the Plaintiff could perform work as a janitor because the vocational expert's testimony did not constitute substantial evidence to support that conclusion.

The ALJ also concluded that Plaintiff could perform work as a laundry worker (DOT 361.684-014).  (Tr. 26.)   Plaintiff speculates that the laundry worker position involves "large washers and dryers, large lines of clothes, [and] heavy duty clothes and linen pressers."  (Doc. 40 at 14.)   Plaintiff asserts that "[i]f a belt on a vacuum is dangerous, these cannot be safe."  (*Id.*)  However, as the Commissioner asserts, the DOT definitions of laundry worker states that moving mech[anical] parts [are] not present — [a]ctivity or condition does not exist," and that "high exposed places [are] not present — [a]ctivity or condition does not exist."  *See* DOT 361.684-014 Laundry Worker, 1991 WL 672983; www.occupationalinfo.org/36/361684014.html (last visted April 29, 2015).[11] Thus, the ALJ did not err in relying on the vocational expert's testimony that Plaintiff could perform work as a laundry worker.  *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175-76 (9th Cir. 2008) (the ALJ reasonably relied on vocational expert's testimony that was consistent with the DOT).

Finally, the ALJ found that Plaintiff could perform work as a hand packager (DOT 706.684-022).  (Tr. 26.)   Plaintiff argues that this finding is confusing because DOT 706.684-022 is entitled assembler, small products.  (Doc. 40 at 14.)   The vocational expert testified that she was "hesitant to use the assembler, because other positions might have moving machinery."  (Tr. 57.)  The ALJ then asked the vocational expert whether Plaintiff could perform work as a hand packager.  (*Id.*)  The vocational expert referred to hand packager as DOT 706.684-022.  However, as Plaintiff argues, that code defines the position of an assembler.   *See* www.occupationalinfo.org/70/706684022.html.  (last visited April 29, 2015).   Because the vocational expert referred to the hand packager position by the wrong DOT code, and testified that she was "hesitant to use the assembler" position, it is unclear whether the vocational expert considered the correct description of the hand packager position (DOT 920.587-018,

---

[11]   DOT 361.684-014 states that a laundry worker "[w]ashes and irons wearing apparel, sheets, blankets, and other linens and clothes used by employees of logging, construction, mining, or other camp, or washes uniforms, aprons, and towels in establishments supplying employees with these linens.  Uses equipment usually found in household or in small laundry."

www.occupationalinfo.org/92/920587018.html (last visited April 29, 2015) to determine whether Plaintiff could perform that work.   Accordingly, the Court finds that the vocational expert's testimony did not constitute substantial evidence to support the ALJ's conclusion that Plaintiff could perform work as a hand packager.

Although the ALJ erred in concluding that Plaintiff could perform work as a janitor and a hand packager, that error was harmless because the ALJ also found that Plaintiff could perform work as a laundry worker.

**VII.   Conclusion**

As set forth above, the ALJ's determination is supported by substantial evidence in the record and is free of harmful legal error.

Accordingly,

**IT   IS   ORDERED** that the Commissioner's disability determination is **AFFIRMED**.   The Clerk of Court is directed to enter judgment in favor of the Commissioner and against Plaintiff and to terminate this action.

Dated this 29th day of April, 2015.

Bridget S. Bade
United States Magistrate Judge